## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                       **NO. 18-82**

**STEPHEN J. SCOTT**                            **SECTION: "H"**

## ORDER AND REASONS

Before the Court is Defendant's Motion for Compassionate Release (Doc. 40). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

Defendant Stephen J. Scott has served roughly 72 months of his 135-month sentence for bank robbery.[1] Defendant now asks this Court for compassionate release pursuant to 18 U.S.C. § 3852(c) because of a family tragedy. Leronisha Williams, Defendant's partner and the mother of his son, has a young daughter, C.W. In November of 2020, then-seven-year-old C.W. was playing in front of her aunt's house when armed men approached and fired shots at another individual sitting on the porch behind C.W. One of the bullets struck C.W. and damaged her spinal cord, leaving her paralyzed from the chest

---

[1] Defendant avers that his "earned and projected good time credit is 607 days (or roughly 20 months), resulting in the BOP's calculation that he has served 62.4% of his statutory term. However, he has earned an additional 365 days of [First Step Act] credit." Doc. 75-1 at 10 n.5. Based on these credits, Defendant calculates that his statutory term is reduced to 103 months. *Id.* Thus, having served 72 months, Defendant has completed approximately 69.9% of his statutory term. *Id.* He has served 53.3% of his full term.

down. Defendant previously moved this Court for compassionate release on these grounds, and the Court denied his Motion.

Now before the Court is Defendant's Second Motion for Compassionate Release, wherein he argues that his family's need for caregiving assistance has dramatically increased since he filed the first motion. Specifically, Defendant avers that C.W. has grown, as she is now 10 years old, which makes it difficult for her mother—C.W.'s sole caregiver—to move and otherwise care for her. C.W. continues to experience medical complications and spent over 300 days in the hospital following spinal surgery in 2023.[2] Defendant also points to his continued "perfect post-conviction conduct and extraordinary rehabilitative strides in prison" in support of his motion for compassionate release.[3] This Motion for Compassionate Release was set for submission on May 8, 2024, and the Government has not filed an opposition into the record.

## LEGAL STANDARD

"The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582."[4] Section 3582(c), as amended by the First Step Act, states in pertinent part that:

> The court may not modify a term of imprisonment once it has been imposed except that— (1) in any case— (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons

---

[2] Defendant alleges that C.W. developed hip problems and open wounds on her legs while in the hospital. As a result, doctors had to undergo "weekly surgeries and skin grafts to treat her wounds." Doc. 75-1 at 5.

[3] Doc. 75 at 1. Defendant also incorporated by reference the information provided in his previous filings related to his first Motion for Compassionate Release. *See* Doc. 75-1 at 1 n.1; *see also* Docs. 40 & 56.

[4] United States v. Garcia, 606 F.3d 209, 212 (5th Cir. 2010).

to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i)     extraordinary and compelling reasons warrant such a reduction; . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

The Sentencing Commission's policy statement regarding compassionate release sets forth what facts are considered "extraordinary and compelling." As of November 1, 2023, the policy statement applies to motions filed by the Director of the BIO and motions filed by defendants.[5] The policy statement provides that "extraordinary and compelling" reasons exist under the following circumstances: (1) the defendant is suffering from certain medical conditions, (2) the defendant is over 65 years of age and has experienced deteriorating physical or mental health, (3) death or incapacitation of certain family members where the defendant would be the only remaining caregiver, (4) the defendant, while in custody, was the victim of sexual or physical abuse, or (5) "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in

---

[5] United States v. Bazan, No. 1:11-CR-142-1-MJT, 2024 WL 1472791, at *1 (E.D. Tex. Mar. 15, 2024). In interpreting the policy statement post-First Step Act but pre-November 1, 2023 amendment, the Fifth Circuit previously held that "neither the [Sentencing Commission's] policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582." United States v. Shkambi, 993 F.3d 388, 393 (5th Cir. 2021). The Sentencing Guidelines have, however, been amended since the opinion in *Shkambi* was rendered. The policy statement at § 1B1.13 now applies to motions by "the Director of the Bureau of Prisons or the defendant." U.S.S.G. § 1B1.13(a).

paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)."[6]

## LAW AND ANALYSIS

"The defendant bears the burden of demonstrating that he is entitled to compassionate release and that he has exhausted his administrative remedies."[7] Courts may hear requests for compassionate release

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*.[8]

Defendant submitted a written request to the warden of Yazoo City Low FCI on December 13, 2023 and has attached it to his Motion.[9] Over 30 days have passed since this request was received by the warden via TRULINCS Inmate Email System.[10] Accordingly, the Court has jurisdiction to consider Defendant's Motion for Compassionate Release.

The Court must next consider whether extraordinary and compelling reasons warrant compassionate release and whether the factors in § 3553(a) favor early release. Defendant argues that Ms. Williams's inability to care for C.W. and their son while also working to support the family constitutes an extraordinary and compelling reason for compassionate release. After a few

---

[6] U.S.S.G. § 1B1.13(b).

[7] United States v. Metz, No. 92-469, 2020 WL 2838593, at *2 (E.D. La. June 1, 2020); United States v. Clark, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (citing United States v. Heromin, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019)).

[8] 18 U.S.C. § 3582(c)(1)(A) (emphasis added).

[9] Doc. 75-2 (requesting "compassionate release pursuant to the First Step Act").

[10] United States v. Neal, No. 3:21-CR-0449-B-1, 2023 WL 5352910, at *2 (treating an e-mail sent to the warden requesting a motion for compassionate release as received on the day it was sent).

months of dating, Defendant moved in with Ms. Williams in 2016 and began acting as a father figure to C.W., who has never known her biological father. Defendant and Ms. Williams had a son in 2017. In April of 2018, Defendant was arrested for bank robbery, and in February of 2019, he was sentenced to 135 months in prison, to be followed by a three-year term of supervised release.

In November of 2020, C.W. was tragically injured, precipitating the circumstances that led to the instant Motion. Defendant alleges that post-injury, C.W. requires constant assistance with bathing, using the bathroom, taking medications, attending physical and mental therapy, and more. Ms. Williams is left to do and finance all of this on her own, in addition to caring for her young son. Defendant alleges that—for a variety of reasons—no family members from either his or Ms. Williams's family can assist in taking care of C.W. and her brother. Defendant avers that Ms. Williams has been unable to maintain regular employment because of her need to provide consistent care for C.W. Additionally, Defendant alleges that Ms. Williams suffers from mental illness but cannot afford or attend further treatment because of her responsibilities to her children. Defendant therefore asks this Court to reduce his sentence to time served, subject to any additional conditions of supervision the Court finds appropriate.

While the above circumstances existed at the time of Defendant's first motion for compassionate release, Defendant further alleges that the physical, emotional, and financial burdens on Ms. Williams have only become more severe. Notably, Defendant alleges that C.W. spent over 300 days in the hospital in 2023 following spinal surgery. While in the hospital, C.W. developed hip problems and open wounds on her legs, which led to an infection that reached her bones. C.W.'s wounds still remain following discharge from the hospital. In addition to C.W.'s continued need for medical care, Defendant

alleges that C.W. has grown significantly from age seven to ten, which makes it difficult for Ms. Williams alone to transfer and otherwise care for C.W.

Accordingly, the Court finds the last circumstance in the Sentencing Commission's policy statement applicable, *i.e.*, that Defendant faces a circumstance similar in gravity to those reasons described in paragraphs (1) through (4) of the policy statement.[11] It is undisputed that C.W. was essentially rendered a special-needs dependent by her injuries. While not incapacitated, the Court notes that Ms. Williams "need not be incapacitated for the court to find that she is no longer able to care for a special-needs dependent without help."[12] Ms. Williams is C.W.'s sole caregiver and has been unable to work to support the family while continuing in her capacity as C.W.'s caregiver, which further strains her ability to care for Defendant's six-year-old son. The family needs Defendant's assistance to physically transfer C.W. to her wheelchair, lift her into the car or her bed, and otherwise care for her in the home—all while caring for another minor child. The Court therefore finds the foregoing unique combination of circumstances "extraordinary and compelling."[13]

While the Court previously expressed concern with Defendant's criminal past and history of substance abuse, his current record provides reasonable assurance that he has addressed these issues enough to be able to assist his family and to ensure the Court that he is not a danger to the safety of others or the community. Defendant has a clear disciplinary record and has completed drug education and treatment programs, parenting and business classes, and a 600-hour vocational training program.[14] Defendant has also maintained

---

[11] U.S.S.G. § 1B1.13(b)(5).

[12] *See* United States v. Barnes, No. 3:17-cr-00011, 2021 WL 1269783, at *4 (S.D. Ind. Jan. 29, 2021).

[13] *See, e.g.*, United States v. Resendiz, No. 21-cr-00143-BAS-1, 2023 WL 7309439, at *2 (S.D. Cal. Nov. 6, 2023); *Barnes*, 2021 WL 1269783, at *4.

[14] Doc. 75-3.

employment while incarcerated and made regular payments toward his restitution balance.[15] Defendant has served approximately 62.4% of his statutory term, without factoring in 365 days of First Step Act time credits earned.[16] In addition to Defendant's reasonable assurance of rehabilitation, the Court may still place conditions on Defendant's term of supervised release that prohibit illegal drugs and require substance abuse testing.

The Court also finds that the § 3553(a) factors favor early release. Although serious, Defendant's current offense was a non-violent one. While his past robbery offenses did include weapons—though not firearms—they occurred nearly 15 years ago, when Defendant was much younger. Considering his rehabilitative progress, Defendant is now held at a low-security facility and has a "low risk" recidivism level.[17] The Court finds that 72 months in custody, particularly given C.W.'s injuries and condition that arose after he was incarcerated, serves as adequate deterrence to criminal conduct and just punishment for the offense. Accordingly, the Court finds that Defendant has carried his burden in showing he qualifies for compassionate release pursuant to 18 U.S.C. § 3852(c).

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release (Doc. 40) is **GRANTED**.

**IT IS ORDERED** that Scott's sentence is **MODIFIED** and **REDUCED** to time served pursuant to 18 U.S.C. § 3582(c).

---

[15] *Id.*

[16] His projected release date is November 8, 2026. Doc. 75-5 at 2.

[17] Doc. 75-4 at 1.

7

**IT IS FURTHER ORDERED** that the three-year term of supervised release and special conditions imposed in the original sentence remain in effect, with the following additional special condition imposed. The defendant shall be placed on home detention, with location monitoring technology as directed by United States Probation, for a period of 12 months, to commence within ten (10) days from his release from imprisonment.  The defendant is restricted to his residence at all times except for employment, education, religious services; medical (including minor child medical appointments), substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations, or other activities as pre-approved by the United States Probation Officer.  The defendant shall observe the rules specified by the United States Probation Office and contribute to the cost of this program to the extent that the defendant is deemed capable by the United States Probation Officer.

**IT IS FURTHER ORDERED** that the Warden of Yazoo City Low FCI shall immediately release Stephen Scott from custody.

New Orleans, Louisiana this 17th day of May, 2024.

_____

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**